## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CM REGENT INS. CO., a/s/o,** | : | **Civil No. 4:22-CV-205** |
| **MONTGOMERY AREA SCH. DIST.,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **v.** | : | |
| | : | |
| **CAMASTER, INC.** | : | |
| | : | |
| **Defendant.** | : | |

## MEMORANDUM OPINION

### I.    Introduction

Pending before the court is the defendant's motion to dismiss the plaintiff's amended complaint. (Docs. 18, 19). The plaintiff, CM Regent Insurance Company ("CM Regent"), a subrogee of the Montgomery Area School District ("MASD"), brought suit against the defendant, CAMaster, Inc. ("CAMaster"), alleging claims sounding in strict liability, negligence, and promissory estoppel. CM Regent's claims arise out of substantial property damage to a high school within MASD from a fire that ignited within a dust collection venting system in the school's wood shop. This dust collection venting system was connected to the Cobra Elite CNC Router ("CNC router") manufactured by CAMaster. After consideration, we will grant the

1

defendant's motion to dismiss as to Count I, strict products liability, and will deny the motion as to the remaining counts.

## II.   **Background**

The factual background of this Memorandum Opinion is taken from the well-pleaded facts alleged in the plaintiff's amended complaint (Doc. 18), which we must accept as true for purposes of the instant motion to dismiss.

On March 5, 2020, in a wood shop in a high school in the Montgomery Area School District ("MASD"), a fire ignited in the dust collection venting system that was connected to the Cobra Elite CNC Router ("CNC router") manufactured by the defendant, CAMaster. (Id., ¶ 1-5). CM Regent Insurance Company ("CM Regent"), the plaintiff, insures properties owned by the MASD, including the high school where this fire occurred. (Id.)

CM Regent alleges the fire was due to an accumulation of combustible wood dust in the venting system which was ignited by the heat flowing through the venting system produced from the routing process. (Id., ¶ 6). Further, the plaintiff asserts that the accumulation of dust was because of a change in velocity of air pressure due to the transition from a 6-inch diameter duct to an 8-inch diameter duct in the venting system. (Id.) CM Regent claims that no information, instructions, or warnings, relating to the proper dust collection system came with the CNC router. (Id., ¶ 9). James Brecht, Director of Buildings and Grounds for MASD, called CAMaster twice

concerning the installation of the dust collection system. (<u>Id.</u>, ¶ 10). The plaintiff explains that the first time Mr. Brecht called CAMaster, an individual advised Mr. Brecht to tie the CNC router exhaust into their existing baghouse system. (<u>Id.</u>, ¶ 11). According to the plaintiff, the second time Mr. Brecht called CAMaster, Mr. Brecht explained his plan to install a 6-inch diameter exhaust duct and transition to an 8-inch diameter duct that will connect to the existing duct collection main duct, and in response to this plan, an individual from technical support, Michael Skena, assured Mr. Brecht, "you should be fine." (<u>Id.</u>, ¶ 12).

CM Regent alleges the fire caused significant fire and smoke damage to the insured's property and that CM Regent sustained damages valued at $527,799.26 in payments for repair and restoration of the building and for the repair and replacement of damaged business personal property. (<u>Id.</u>, ¶ 13-16).

On February 10, 2022, CM Regent filed this action against CAMaster (Doc. 1), and the amended complaint was filed on July 22, 2022. (Doc. 18). The amended complaint asserts the following claims: strict products liability (Count I), negligence (Count II), detrimental reliance/promissory estoppel (Count III), and strict liability harm from reliance on seller's misrepresentation (Count IV). CAMaster filed a motion to dismiss on August 11, 2022 (Doc. 19).

The motion is fully briefed and is ripe for resolution. (Docs. 18-22, 24, 26). For the reasons that follow, we will grant the defendant's motion to dismiss as to Count I but will deny the defendant's motion as to the remaining counts.

## III.  <u>Motion to Dismiss – Standard of Review</u>

A motion to dismiss tests the legal sufficiency of a complaint. It is proper for the court to dismiss a complaint in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure only if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). With respect to this benchmark standard for the legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), continuing with our opinion in <u>Phillips</u> [<u>v. County of Allegheny</u>, 515 F.3d 224, 230 (3d Cir. 2008)], and culminating recently with the Supreme Court's decision in <u>Ashcroft v. Iqbal</u>, –U.S.–, 129 S. Ct. 1937 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light

4

most favorable to the plaintiff. Jordan v. Fox, Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action, a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id., at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id., at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id., at 678. Rather,

in conducting a review of the adequacy of a complaint, the Supreme Court has

advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than
> conclusions are not entitled to the assumption of truth. While legal
> conclusions can provide the framework of a complaint, they must be
> supported by factual allegations. When there are well-pleaded factual
> allegations, a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement to relief.

Id., at 679.

Thus, following Twombly and Iqbal, a well-pleaded complaint must contain

more than mere legal labels and conclusions; it must recite factual allegations

sufficient to raise the plaintiff's claimed right to relief beyond the level of mere

speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to
> state a claim, district courts should conduct a two-part analysis. First,
> the factual and legal elements of a claim should be separated. The
> District Court must accept all of the complaint's well-pleaded facts as
> true, but may disregard any legal conclusions. Second, a District Court
> must then determine whether the facts alleged in the complaint are
> sufficient to show that the plaintiff has a "plausible claim for relief." In
> other words, a complaint must do more than allege the plaintiff's
> entitlement to relief. A complaint has to "show" such an entitlement
> with its facts.

Fowler, 578 F.3d at 210-11.

As the Court of Appeals has observed:

> The Supreme Court in Twombly set forth the "plausibility" standard for
> overcoming a motion to dismiss and refined this approach in Iqbal. The
> plausibility standard requires the complaint to allege "enough facts to

state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570, 127 S. Ct. 1955. A complaint satisfies the plausibility standard when the factual pleadings "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127 S. Ct. 1955). This standard requires showing "more than a sheer possibility that a defendant has acted unlawfully." Id. A complaint which pleads facts "merely consistent with" a defendant's liability, [ ] "stops short of the line between possibility and plausibility of 'entitlement of relief.' "

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 220-21 (3d Cir. 2011), cert. denied,

132 S. Ct. 1861 (2012).

In practice, consideration of the legal sufficiency of a complaint entails a

three-step analysis:

First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Iqbal, 129 S. Ct. at 1947. Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id., at 1950. Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quoting

Iqbal, 129 S. Ct. at 1950).

In considering a motion to dismiss, the court generally relies on the complaint,

attached exhibits, and matters of public record. Sands v. McCormick, 502 F.3d 263,

268 (3d Cir. 2007). The court may also consider "undisputedly authentic

document[s] that a defendant attached as an exhibit to a motion to dismiss if the

plaintiff's claims are based on the [attached] documents." Pension Benefit Guar.

7

Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002); see also U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 382, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss in one for summary judgment"). However, the court may not rely on other parts of the record in determining a motion to dismiss, or when determining whether a proposed amended complaint is futile because it fails to state a claim upon which relief may be granted. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

## IV.   **Discussion**

The plaintiff, CM Regent, asserts the following claims against the defendant, CAMaster: strict products liability (Count I), negligence (Count II), detrimental reliance/promissory estoppel (Count III), and strict liability harm from reliance on seller's misrepresentation (Count IV). CAMaster argues that CM Regent's strict products liability claim should be dismissed for primarily two reasons. (Doc. 20, at 4-5). First, CAMaster argues it did not manufacture or place the dust collection system into the stream of commerce, which is the product in which the fire occurred;

thus, it cannot be held strictly liable under Section 402A Restatement (Second) of Torts. (<u>Id.</u>) Second, CAMaster argues that CM Regent's claim fails because the causation requirement under Section 402A is not satisfied because the alleged damage was caused by a product not manufactured by CAMaster. (<u>Id.</u>, at 5). CM Regent argues that whether the fire happened because of the product manufactured by CAMaster is not the relevant test but rather "whether the product created a dangerous or unsafe condition for failure to provide proper instructions or warnings." (Doc. 21, at 6).

Regarding the negligence claim, CAMaster asserts that CM Regent has failed to allege a duty owed by CAMaster to the insured (Doc. 20, at 6), to which CM Regent argues that the omission of the word "duty" in the pleadings is not fatal to the claim. (Doc. 21, at 9). In turn, CAMaster argues that the promissory estoppel claim should be dismissed because the assurance, "you should be fine," made by the CAMaster representative does not rise to the level of a contract like promise, which is required to enforce to maintain such a claim. (<u>Id.</u> at 6-7).

As to the final claim, strict liability for harm from reliance on seller's misrepresentation, CAMaster argues it cannot be held liable under Section 402B of the Restatement (Second) of Torts because "physical harm" is a requirement, which it argues should not include property damage as occurred in this case (Doc. 26), and CAMaster did not manufacture the venting system or make any representation of

fact concerning the character or quality of the venting system to the public. (Doc. 22 at 10). In response, CM Regent argues that "physical harm" does include property damage (Doc. 24) and it has sufficiently pleaded the necessary elements to state a claim under Section 402B of the Restatement (Second) of Torts. (Doc. 21 at 13). After consideration and for the reasons discussed below, we will grant CAMaster's motion to dismiss CM Regent's strict products liability claim (Count I) and will deny CAMaster's motion as to the remaining claims.

### A.   <u>Count I - Strict Products Liability</u>

In diversity cases, federal courts follow the law of the State in which the court sits. <u>Davis v. Geico Gen. Ins. Co.</u>, 957 F. Supp. 2d 544, 548 (M.D. Pa. 2013). Thus, we are guided by Pennsylvania law in addressing this dispute. Pennsylvania has adopted the strict products liability formula set forth in Section 402A of the Restatement (Second) of Torts. <u>See</u> <u>Webb v. Zern</u>, 220 A.2d 853, 853 (Pa. 1966). Section 402A provides:

> (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to

> liability for physical harm thereby caused to the ultimate user or
> consumer, or to his property, if
>> (a) the seller is engaged in the business of selling such a product,
>> and
>> (b) it is expected to and does reach the user or consumer without
>> substantial change in the condition in which it is sold.
>
> (2) The rule stated in Subsection (1) applies although
>> (a) the seller has exercised all possible care in the preparation and
>> sale of his product, and
>> (b) the user or consumer has not bought the product from or
>> entered into any contractual relation with the seller.

Restatement (Second) of Torts, § 402A. To prevail under a theory of strict products liability, the plaintiff must establish: "(1) that the product was defective; (2) that the defect was a proximate cause of the plaintiff's injuries; and (3) that the defect causing the injury existed at the time the product left the seller's hands." Pavlik v. Lane Ltd./Tobacco Exporters Int'l, 135 F.3d 876, 881 (3d Cir. 1998) (citing Davis v. Berwind Corp., 690 A.2d 186, 190 (Pa. 1997)). Section 402A allows a plaintiff to recover for injuries from "one who sells any product in a defective condition unreasonably dangerous to the user." A plaintiff may establish a "defective condition [in one of three ways] . . . by proving either [1] a manufacturing defect, [2] a design defect, or [3] a failure-to-warn defect." Smith v. Howmedica Osteonics Corp., 251 F.Supp.3d 844, 847 (E.D. Pa. 2017); see also High v. Pennsy Supply, Inc., 154 A.3d 341, 345-46 (Pa. Super. 2017).

In the amended complaint, CM Regent alleges the CNC router was defective based on the three recognized defective conditions: a manufacturing defect; a defect

in the CNC router's design; and a failure to warn about the proper dust collection system to be used with the CNC router. (Doc. 18, ¶¶ 18, 19). Upon consideration of the amended complaint, CM Regent's strict products liability claim will be dismissed in its entirety, as CM Regent has not alleged facts sufficient to state that the CNC router had a design defect or manufacturing defect, and Pennsylvania law does not permit a company that did not manufacture or supply the defective product to be held strictly liable. Zielinski v. Mega Manufacturing, Inc., 2020 WL 5993626 at *2 (E.D. Pa. Oct. 9, 2020). We will address the defective design, manufacturing defect, and failure to warn defective condition allegations in turn.

To succeed under "a design defect theory, plaintiffs must prove that the product is defective and that at the time it left the control of the manufacturer it lacked the feature necessary to make it safe for its intended use, or contained a feature that made it unsafe for its intended use." Tincher v. Omega Flex, Inc., 628 Pa. 296, 316 (Pa. Super. Ct. 2014). In its amended complaint, CM Regent asserts the legal conclusion that the CNC router has a design defect but fails to allege any specifics as to what constitutes the design defect. Further, CM Regent does not assert that the CNC router's alleged defective design was the proximate cause of the property damage. Accordingly, this claim will be dismissed.

For the same reasons, we find that CM Regent has not adequately pleaded a strict products liability claim due to a manufacturing defect. "A manufacturing

defect may be established by direct evidence of 'a breakdown in the machine or a component thereof.' Alternately, a manufacturing defect may be established by circumstantial evidence—sometimes referred to as a 'malfunction theory'—where a plaintiff can rule out abnormal use or secondary causes of a malfunction." Smith v. Howmedica Osteonics Corp., 251 F. Supp. 3d 844, 851 (E.D. Pa. 2017) (internal citations omitted). CM Regent fails to allege what constitutes the manufacturing defect and fails to allege that this manufacturing defect is a proximate cause of the property damage. Mere conclusory statements that the CNC Router was defective as to its design or the way it was manufactured do not satisfy the pleading requirements at the motion to dismiss stage.

The crux of the issue for Count I, strict products liability, lies with whether CM Regent alleged a viable strict products liability claim under the theory that CAMaster failed to warn about the proper dust collection system to be used with the CNC router.

> [A] plaintiff raising a failure-to-warn claim must establish only two things: that the product was sold in a defective condition "unreasonably dangerous" to the user, and that the defect caused plaintiff's injury. To establish that the product was defective, the plaintiff must show that a warning of a particular danger was either inadequate or altogether lacking, and that this deficiency in warning made the product "unreasonably dangerous." For the plaintiff in a failure-to-warn claim to establish the second element, causation, the plaintiff must demonstrate that the user of the product would have avoided the risk had he or she been warned of it by the seller. If the plaintiff fails to

establish either of these two elements, the plaintiff is barred from recovery as a matter of law.

Philips v. A-Best Prods. Co., 665 A.2d 1167, 1171 (Pa. 1995) (internal citations omitted). Whether a warning was adequate is a question of law for the judge to resolve. Mackowick v. Westinghouse Elec. Corp., 575 A.2d 100, 102 (Pa. 1990).[1]

As we understand it, Regents' strict liability claim stems not from a defect in the router itself, but rather from a claim that the router's six inch dust collection vent collection system's connection to the school's eight inch dust ventilation system allowed dust to accumulate to a dangerous degree within the school's venting system. Therefore, because the danger arose withing the school's venting system and its connection to the router this case raises the issue of whether CAMaster can be held liable under Section 402A for failing to warn about the use of a product it did not manufacture. As discussed below, this scenario may give rise to plausible claims of liability under some legal theories, but we believe that Section 402A, as

---

[1] In Tincher v. Omega Flex, Inc., 628 Pa. 296 (Pa. 2014), the Pennsylvania Supreme Court overruled Azzarello v. Black Brothers Company, 480 Pa. 547, 391 A.2d 1020 (Pa. 1978), and held that the finder of fact is to make the threshold determination of whether a product is defectively designed. Hatcher v. SCM Group North America, Inc., 167 F. Supp. 3d 719, 726 (E.D. Pa. 2016). Although, "the Pennsylvania Supreme Court has not extended Tincher to failure-to-warn claims. Therefore, this Court will continue to apply Mackowick [v. Westinghouse Elec. Corp.] in failure-to-warn cases, which requires the Court to make the initial determination on the adequacy of the warning." Id.

interpreted by the Pennsylvania courts, would not provide grounds for relief in this specific setting.

In Zielinski v. Mega Manufacturing, Inc., 2020 WL 5993626 (E.D. Pa. Oct. 9, 2020), our sister court in the Third Circuit explained that Pennsylvania law does not provide for recovery in such a situation. The court explained:

> First, under Pennsylvania law, "a company that neither manufactured nor supplied the defective product is not liable under a theory of strict liability or failure to warn." Callender v. Brighton Mach. Co., No. 755 WDA 2013, 2014 WL 10575351, at *8 (Pa. Super. Ct. Sept. 17, 2014) (citation omitted); see also Schaffner v. Aesys Techs., LLC, No. 1901 EDA 2008, 2010 WL 605275, at *5 (Pa. Super. Ct. Jan. 21, 2010). In Toth v. Econ. Forms Corp., 571 A.2d 420, 423 (Pa. Super. Ct. 1990), the Superior Court held that the manufacturer of a metal scaffolding system did not have duty to warn about the dangers of using wooden planks on the scaffolding because the manufacturer did not supply the planking. Likewise, in Mangabat v. Sears Roebuck & Co., No. 92-cv-1742, 1992 WL 245881 (E.D. Pa. Sept. 18, 1992), the court granted summary judgment in favor of a hedge trimmer manufacturer on a failure-to-warn claim where the plaintiff was struck by the metal prongs of an extension cord that the defendant did not manufacture but which the plaintiff attached to its product.

Id. at *2.

Zielinski is factually similar to this case because the product that caused the injury was not manufactured by the defendant. In Zielinski, the defendant manufactured a Whitney 3400 CP machine ("Whitney machine"), that punches and/or stamps sheet metal. Id. The Whitney machine has an optional piece of equipment, the PartHANDLER-II, that can move finished sheets from the Whitney machine to a nearby table. Id. The defendant did not provide or supply the table that

was used in connection with the Whitney machine. While transferring the metal sheets from the Whitney machine to the table, Robert Zielinski was tragically killed due to the table upending and the sheets that had been loaded onto the table fell on Mr. Zielinski. Id. at *1. Applying Pennsylvania law, the District Court for the Eastern District of Pennsylvania explained that the defendant could not be held strictly liable for failing to warn because it did not manufacture or supply the table. Id. at *3. Similarly, we find that CAMaster cannot be held strictly liable for failing to warn about the dangers of connecting its device to the school dust collection system that it did not manufacture or supply.

CM Regent directed this court to Davidson v. Sear, Roebuck & Co., 1990 WL 9534 (E.D. Pa. 1990), which addressed whether a warning was adequate concerning a replacement part for a power sander. In Davidson, the plaintiff suffered injuries while operating a sander that was manufactured and sold by the defendant. Id. at *1. A piece broke off from a rubber pad within the sander and hit the plaintiff in the eye. Id. Notably, at the time of the accident, the rubber pad used by the plaintiff was not the rubber pad manufactured or sold by the defendant, it was a replacement part. Id. at *2-3. Both parties' experts testified that the rubber pad used by the plaintiff at the time of accident did not have a steel metal insert used to hold the pad together while the sander is in use and was a different type of rubber composition than the pad sold by the defendant. Id. at *2. The instruction in the owner's manual concerning

replacement parts read: "When servicing use only identical replacement parts[,]" but did the owner's manual did not define "identical replacement parts." Id. at *3. The instruction also appeared on the sander itself. Id. at *3.

The court in Davidson found that the defendant provided inadequate warnings regarding the appropriate replacement parts for the sander, and that the plaintiff established by a preponderance of the evidence that the defendant's failure to provide an adequate warning was a substantial factor in causing the harm to the plaintiff. Id. at *5-6. The present case is distinguishable from Davidson, however, because the dust collection system is a product that is used in connection with the CNC router unlike the rubber pad that replaced the original rubber pad that the defendant included in the sander it manufactured.

The court must apply Pennsylvania law which dictates that in this factual scenario—a scenario involving a product that caused the injury but was not manufactured, supplied, or sold by the defendant, or a replacement part—the defendant cannot be held strictly liable for failing to warn under Section 402A of the Restatement (Second) of Torts. Zielinski, 2020 WL 5993626 at *2; Toth v. Economy Forms Corp., 571 A.2d 420, 423 (Pa. Super. 1990) ("Appellants' theory would have us impose liability on the supplier of metal forming equipment to warn of dangers inherent in wood planking that it did not supply. Pennsylvania law does not permit such a result"); Mangabat v. Sears Roebuck and Co., 1992 WL 245881 at *3 (E.D.

Pa. September 18, 1992) ("Because Sears did not manufacture, supply, or sell the product which ultimately caused the injury, Pennsylvania law does not permit Sears to be held strictly liable for failure to warn under Restatement 2d of Torts, § 402A"). Given these limits on liability prescribed by Pennsylvania law on Section 402A claims, CAMaster's motion to dismiss with respect to Count I will be granted.

### B.   <u>Count II – Negligence</u>

CM Regent further asserts that CAMaster was negligent by failing to provide the proper instruction or warnings concerning the installation of the dust collection system and was also negligent by assuring MASD's employee that a transition from 6-inch diameter duct to an 8-inch diameter duct in the collection system "should be fine." According to Pennsylvania law, a plaintiff asserting a claim of negligence

> [M]ust establish that (i) the defendant has a legal duty to conform to a certain standard of care to prevent unreasonable risks to the plaintiff, (ii) the defendant's conduct breached that duty, (iii) the breach caused an injury to the plaintiff, and (iv) the injury resulted in actual losses or damages.

<u>Baptiste v. Bethlehem Landfill Co.</u>, 965 F.3d 214, 227 (3d Cir. 2020).

In addition to finding that the defendant could not be held strictly liable for failing to warn about a product it did not manufacture, the <u>Zielinski</u> court also found that the defendant was not negligent. The court opined that "[b]ecause 'the standard for establishing a [strict] liability claim was specifically designed to be more easily satisfied than that for a [negligence] claim[,]' it is not surprising that [the plaintiff's]

negligence claims fair no better." Zielinski, 2020 WL 5993626 at *3 (quoting Schwartz v. Abex Corp., 106 F. Supp. 3d 626, 643 (E.D. Pa. 2015) (citing Tincher, 104 A.3d 328, 364, 401 (Pa. 2014))). The court explained that in that case, the negligence claim failed for the same reason as the strict liability claim—"Mega had no duty to warn about the use of a table it did not manufacture, supply, or sell . . ." Id.

However, in the instant case, we find that CM Regent's negligence claim meets federal pleading requirements at this juncture. In our view, the key difference between the present case and Zielinski is the plaintiff's allegation that a CAMaster representative, Mr. Skena, provided assurance to a MASD employee, Mr. Brecht, regarding the transitioning to a larger diameter duct within the dust collection system. (Doc. 18 ¶ 12). Here, the amended complaint alleges that the CAMaster representative was aware of MASD's plan to transition in duct size from a 6-inch diameter duct to an 8-inch diameter duct, and the CAMaster representative not only failed to warn the MASD employee of potential risks associated with this plan but affirmatively assured the MASD he "should be fine" in doing so. In taking this additional step advising MASD that it "should be fine" installing the duct system in a fashion which allegedly led to this fire CAMaster assumed a duty to provide accurate guidance to the school and it is alleged that CAMaster breached that duty by providing negligent installation advice. Thus, taking these allegations as true as

we must at the motion to dismiss stage, we find that CAMaster had a legal duty to answer the question in a way that "conform[ed] to a certain standard of care to prevent unreasonable risks . . ." Baptiste, 965 F.3d at 227, and that the failure to do so, as well as the assurance that there was essentially no risk, was a breach of that duty. Moreover, while CAMaster denies that such an assurance was ever made, this denial merely creates a dispute of fact which is not appropriately resolved at the motion to dismiss stage where our judgment is cabined and confined by the well-pleaded facts in the complaint. Accordingly, the defendant's motion to dismiss the negligence claim will be denied.

### C.   Count III – Detrimental Reliance/Promissory Estoppel

CM Regent also brings a claim of detrimental reliance and promissory estoppel. For its part, CAMaster argues that CM Regent's promissory estoppel claim should be dismissed because the CAMaster representative's assurance—"you should be fine"—is not a contract-like promise as a matter of law. (Doc. 20, at 7). According to Pennsylvania law, a party must show the following to recover under the doctrine of promissory estoppel:

> 1) the promisor made a promise that he should have reasonably expected to induce action or forbearance on the part of the promisee; 2) the promisee actually took action or refrained from taking action in

reliance on the promise; and 3) injustice can be avoided only by enforcing the promise.

I.K. ex rel. B.K. v. Haverford Sch. Dist., 567 F. App'x 135, 137 (3d Cir. 2014)

(quoting Crouse v. Cyclops Indus., 560 Pa. 394, 745 A.2d 606, 610 (2000)).

Given the facts alleged in the amended complaint, we disagree with CAMaster and find instead that CM Regent adequately states a claim based on the doctrine of promissory estoppel. The amended complaint alleges that CM Regent's insured relied on the CAMaster representative's assurance and connected a 6-inch duct to an 8-inch duct. Construing the complaint in a light most favorable to the plaintiff, we find that the CAMaster representative's assurance, "you should be fine," is a promise that the doctrine of promissory estoppel is intended to enforce.

> "Promissory estoppel enables a person to enforce a contract-like promise that would be otherwise unenforceable under contract law principles. 28 AM.JUR. 2d. Estoppel and Waiver § 57 (2008). For example, the doctrine allows a party to enforce a promise that is not supported by consideration. Crouse v. Cyclops Industries, 560 Pa. 394, 402, 745 A.2d 606, 610 (2000)."

Peluso v. Kistner, 970 A.2d 530, 532 (Pa. Cmwlth. 2009).

Here, it is alleged that the CAMaster representative, Mr. Skena, and the MASD employee, Mr. Brecht, who called CAMaster for guidance regarding the dust collection system, did not satisfy the formal requirements of contract formation and enter into an oral contract supported by consideration. However, the amended complaint clearly alleges that the insured relied on the promise. Thus, these facts are

sufficient at this stage to state a claim under the doctrine of promissory estoppel.

Moreover, as we explained with respect to the negligence claim, CAMaster's denial

that its representative made such an assurance or promise only creates a dispute of

fact that  is not appropriate for resolution at the motion to dismiss stage. Therefore,

this claim will not be dismissed.

### D. Count IV – Strict Liability for Harm from Reliance on Seller's Misrepresentation

Finally, CM Regent brings a claim sounding in strict liability based on its

reliance on the seller's misrepresentation regarding the plan for the dust collection

system ducts. This claim, in turn, calls upon us to engage in a predictive analysis of

what Pennsylvania courts would do in this specific situation. Section 402B of the

Restatement (Second) of Torts[2] provides:

> One engaged in the business of selling chattels who, by advertising, labels, or otherwise, makes to the public a misrepresentation of a material fact concerning the character or quality of a chattel sold by him is subject to liability *for physical harm to a consumer of the chattel* caused by justifiable reliance upon the misrepresentation, even though (a) it is not made fraudulently or negligently, and (b) the consumer has not bought the chattel from or entered into any contractual relation with the seller.

Id., § 402B (emphasis added).

---

[2] Pennsylvania has adopted Section 402B of the Restatement (Second) of Torts. Klages v. General Ordinance Equipment Corp., 367 A. 2d 304 (Pa. Super 1976).

With respect to the question of whether the plaintiff's harm fits within 402B's "physical harm" requirement,[3] the plaintiff directs us to Section 7 of the Restatement (Second) of Torts which provides: "(3) The words 'physical harm' are used throughout the Restatement of this Subject to denote the physical impairment of the human body, *or of land or chattels*." Id., § 7 (emphasis added). Further, Section 15 of the Restatement (Second) of Torts defines bodily harm as "any physical impairment of the condition of another's body, or physical pain or illness." Id., § 15.

For its part, the defendant contends that harm to property does not fall within the realm of 402B's "physical harm" requirement, relying on Owen & Davis on Product Liability, which asserts the following:

> Section 402B provides for "liability for physical harm to a consumer," and the Second Restatement defines "physical harm" to mean "physical impairment of the human body, or of land or chattels." While this general Restatement definition suggests an intent to include liability for property damage as well as personal injury, all the cases cited in the comments and all four illustrations involve personal injuries. Moreover, when § 402B's damages language is compared with that of § 402A, a persuasive argument may be made that the American Law Institute intended to restrict § 402B to cases involving personal injury or death. There is a paucity of judicial authority on whether the section supports recovery for property damage. At least one case reads § 402B restrictively, though not unreasonably, as excluding recovery for such losses.

---

[3] We asked the parties to provide supplemental briefing on the issue of whether the plaintiff can claim the defendant is strictly liable under Section 402B for the damage done to MASD's property despite "physical harm" being a requirement under Section 402B; and further, comment "a" to Section 402B states: "A parallel rule, as to strict liability for *pecuniary loss* resulting from such a misrepresentation, *is stated in § 552D*." Restatement (Second) of Torts § 402B cmt. a. (emphasis added).

As for recovery of pure economic loss under § 402B, the law is much more clear. An early, prominent Tennessee decision, <u>Ford Motor Co. v. Lonon</u>, did impose strict tort liability for misrepresentation for economic loss upon the defendant on the basis of § 402B and its reference, in comment a, to a draft parallel rule applicable to pecuniary loss in a then-proposed § 552D. But the ALI never adopted the proposed § 552D, and Tennessee long stood as the solitary state allowing recovery in such cases for pure economic loss. Eventually coming to its senses, the Tennessee Supreme Court in time repudiated the <u>Lonon</u> holding. Apart from Lonon and its progeny in Tennessee, the courts have universally rejected claims for pure economic loss based on § 402B.

<u>1 Owens & Davis on Product Liability</u>, § 3:16 (4th ed.) (updated May 2022) (footnotes omitted).

In our view, absent a Pennsylvania case that holds that "physical harm" does not include property damage, we do not find this secondary authority sufficient to render Section 7 of the Restatement superfluous.[4] Further, while CAMaster directs us to <u>New York State Elec. & Gas Corp. v. Westinghouse Elec. Corp.</u>, 564 A.2d 919 (Pa. Super. 1989), for the proposition that CAMaster cannot be held strictly liable for property damage, reliance on this case is misplaced. In that case, the Superior Court held that losses "purely economic in nature cannot be recovered in negligence

---

[4] "The Restatement definitions, of course, control over the ordinary definition or usage of the terms. <u>See, e.g.</u>, <u>In re One Meridian Plaza Fire Litigation</u>, 820 F. Supp. 1460, 1476–1477 (E.D. Pa.) (applying definitions set forth in § 7), <u>rev'd on other grounds sub nom.</u> <u>Federal Insurance Co. v. Richard I. Rubin & Co. Inc.</u>, 12 F. 3d 1270 (3d Cir.1993), <u>cert. denied sub nom.</u> <u>Ejay Travel, Inc. v. Algemeen Burgerlijk Pensioenfonds</u>, 511 U.S. 1107, 114 S.Ct. 2101, 128 L.Ed.2d 663 (1994)." <u>Ezenwa v. Gallen</u>, 906 F. Supp. 978, 982 (M.D. Pa. 1995).

or strict liability." Id. at 549 (citing REM Coal Company, Inc. v. Clark Equipment

Co., 386 Pa. Super. 401, 563 A. 2d 128 (1989) (en banc)). However, the court

clarified:

> There is no allegation that the alleged defects in the generator caused
> any personal injury. Although NYSEG does allege that the defective
> portions of the generator caused damage to other parts of the generator,
> *in an attempt to demonstrate that the alleged defects in the generator
> caused non-economic damage to "other property" of NYSEG,* this
> contention is clearly without merit. As this court held in Industrial
> Uniform Rental Co. v. International Harvester Co., 317 Pa. Super. 65,
> 463 A.2d 1085 (1983), where various components of a product are
> provided by the same supplier as part of a complete and integrated
> package, even if a defect in one component damages another, there is
> no damage to "other property" of the plaintiff. Id. at 77–78, 463 A.2d
> at 1092 (quoting Northern Power & Engineering Co. v. Caterpillar
> Tractor Co., 623 P.2d 324, 330 (Alaska 1981). This is, therefore, a case
> where the alleged defect in the product only resulted in an impairment
> of the quality of the product itself and consequential damages.
>
> In our opinion in the companion to this case, REM Coal Company, Inc.
> v. Clark Equipment Co., this court has held that economic losses are
> not recoverable in negligence or strict liability in a product liability
> action. Application of that holding to the negligence and strict liability
> counts of NYSEG's complaint compels the conclusion that the pleaded
> damages are not recoverable.

Id. at 550 (emphasis added). The Superior Court held that the plaintiff's claim for

damages—economic loss due to the alleged defective product—was not recoverable.

Implicit in this holding, however, is the notion that damage to "other property" of

the plaintiff, meaning property besides the product itself, is a non-economic damage

and can be recovered under Pennsylvania tort law. Id.

In the present case, CM Regent is attempting to recover for damage to "other property" because the CNC router was not damaged by the fire; rather, the plaintiff is seeking damages related to the repair and restoration of the school building and damage to business personal property. Considering Pennsylvania law permits recovery for "other property," and we are unaware of caselaw that holds otherwise with regard to Section 402B, this court will apply the definition of "physical harm" in Section 7 of Restatement (Second) Torts which includes "physical impairment . . . of land or chattels." Therefore, CM Regent is entitled to recover for its property damage alleged under Section 402B.

Turning to the other requisite elements of Section 402B, the court finds CM Regent successfully pleaded a claim under this Section. CAMaster argues the claim should be dismissed because the amended complaint does not contain "any allegation that CAMaster made any definitive statement at all, much less a statement with respect and or material to the sole product they manufactured and sold, the CNC router." (Doc. 20, at 7-8). However, we construe the assurance by the CAMaster representative to the MASD employee that it would be fine to connect the CNC router to a dust collection system with a transition to a larger diameter duct as "a misrepresentation of material fact concerning the character or quality of a chattel sold by [CAMaster]." Indeed, taking these allegations as true, an inference can be

drawn that this assurance represented the character or quality of the CNC router when used with the 6-inch to 8-inch ducts for the dust collection system.

Moreover, we find that this alleged misrepresentation during the phone call with the MASD employee was made to "the public" as required by Section 402B. Notably, this Restatement section is subject to the following caveat: "The Institute expresses no opinion as to whether the rule stated in this Section may apply (1) where the representation is not made to the public but to an individual . . ." Id. Without clear confines under Pennsylvania law as to what constitutes "the public," this court construes "the public" to include a misrepresentation made to an individual. To construe "the public" to not include a misrepresentation made to an individual would mean that the defendant cannot be held strictly liable for making a misrepresentation directly to the person who suffered the harm but can be held liable if the misrepresentation was made, for example, on the defendant's website or in an owner's manual. Thus, we predict that, when applying Section 402B, Pennsylvania courts would hold that a misrepresentation made directly to an individual would constitute a misrepresentation made to "the public."

Therefore, CAMaster's motion to dismiss with respect to CM Regent's misrepresentation claim under the Restatement (Second) of Torts Section 402B will be denied because CM Regent has alleged justifiable reliance upon a

misrepresentation that was made to the public about a material fact with respect to the character or quality of the CNC router.

## V.    <u>**Conclusion**</u>

For the foregoing reasons, the defendants' motion to dismiss (Doc. 7) will be GRANTED with respect to Count I, and will be DENIED with respect to the remaining counts.

An appropriate order follows.

*<u>S/ Martin C.  Carlson</u>*
Martin C. Carlson
United States Magistrate Judge
